# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROLANDO JUAREZ GILL,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>　　　　　Defendant. | Case No.  1:22-cv-01625-SAB<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DIRECTING THE CLERK OF THE COURT TO ENTER JUDGMENT IN FAVOR OF THE COMMISSIONER OF SOCIAL SECURITY AND AGAINST ROLANDO JUAREZ GILL AND TO CLOSE THIS MATTER<br><br>(ECF Nos. 16, 18) |

## I.

## INTRODUCTION

Rolando Juarez Gill ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings arguing the administrative law judge erred by not explaining a discrepancy between an opinion he found to be supported and the residual functional capacity, the jobs identified

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (See ECF Nos. 7, 9.)

at step five conflict with the limitations in the residual functional capacity and the vocational expert was not questioned on the conflict; and no reasons were offered to reject Plaintiff's subjective complaints.  (Pl.'s Mot. for Summary Judgment ("Mot.") 2, ECF No. 16.)

For the reasons explained herein, Plaintiff's motion for summary judgment shall be denied.

## II.

## BACKGROUND

### A.     Procedural History

Plaintiff protectively filed an application for supplemental security income on February 27, 2020.  (AR 53.)  Plaintiff's application was initially denied on September 30, 2020, and denied upon reconsideration on December 29, 2020.  (AR 87-91, 101-05.)  Plaintiff requested and received a hearing before Administrative Law Judge Nicolas R. Foster ("the ALJ").  Plaintiff appeared for a telephonic hearing on August 11, 2021.  (AR 41-52.)  On August 27, 2021, the ALJ issued a decision finding that Plaintiff was not disabled.  (AR 21-36.)  On July 15, 2022, the Appeals Council denied Plaintiff's request for review.  (AR 7-9.)

### B.     The ALJ's Findings of Fact and Conclusions of Law

The ALJ made the following findings of fact and conclusions of law as of the date of the decision, August 27, 2021:

1. Plaintiff has not engaged in substantial gainful activity since February 27, 2020, the application date.

2. Plaintiff has the following severe impairments: borderline intellectual functioning and hearing loss.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.

4. After careful consideration of the entire record, the ALJ found that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: Plaintiff can understand, remember and carry out simple instructions and make simple work related decisions; he can work at a

consistent pace throughout the workday, but not at a production rate pace where tasks must be performed quickly; he can tolerate occasional changes in the routine work setting with very little independent decision making and no responsibility for the safety of others; he can never exposed to high exposed places, or to moving mechanical parts, and can be exposed to no more than a moderate noise level as that term is defined in the Selected Characteristics of Occupations ("SCO") within the Dictionary of Occupational Titles ("DOT"); and he can read and write simple instructions, such as a grocery list, and can perform simple addition and subtraction, such as is required for small convenience store purchases.

5. Plaintiff has no past relevant work.

6. Plaintiff was born on June 29, 1999, and was 20 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. Plaintiff has at least a high school education.

8. Transferability of job skills is not an issue because Plaintiff does not have past relevant work.

9. Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

10. Plaintiff has not been under a disability, as defined in the Social Security Act, since February 27, 2020, the date the application was filed.

(AR 29-36.)

## III.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show he is unable "to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment[2] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[3]  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once he has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite his

---

[2] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[3] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, <u>available</u> <u>at</u> 1996 WL 374184 (Jul. 2, 1996).[4] A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion); 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given his RFC, age, education, and work experience. 20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE. See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B.     Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. §

---

[4] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly erroneous standard). "[T]he threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard." Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless. Stout, 454 F.3d at 1055–56. Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff raises three areas in which he contends that the ALJ erred in the five-step sequential evaluation.

1       **A.      Whether the ALJ Erred in Rejecting Subjective Testimony**

2           The Court first considers Plaintiff's contention that the ALJ erred by rejecting his and his

3    mother's testimony.   Plaintiff argues that the ALJ erred by only partially accounting for the

4    limited manner of his abilities as testified by his mother at the hearing.   (Mot. 10.)   Plaintiff

5    contends that it is important that he had not finished his schooling by the time he was twenty-one

6    years old.   (Mot. 11.)   Plaintiff asserts that he was assessed to have only an elementary to middle

7    school level development and this is more than "some accommodations" as the ALJ found.   (Mot.

8    11.)   Plaintiff argues his mother testified that he could only manage up to twenty dollars and pick

9    up items from a list if it was written down.   (Mot. 11.)   Plaintiff contends that his testimony

10   reflects greater difficulties and limitations than acknowledged by the RFC.   (Mot. 11.)   Further,

11   Plaintiff asserts that the ALJ did not articulate clear and convincing reasons to reject his

12   testimony, but merely summarized the treatment records that detail his reported symptoms.   (Mot.

13   11.)   Plaintiff contends that the ALJ erred by failing to properly evaluate the criteria in the

14   regulations or SSR 16-3p which direct how subjective complaints should be considered.   (Mot.

15   12.)   Plaintiff argues that the ALJ's failure to offer any clear and convincing reasons to reject his

16   mother's testimony regarding his symptoms and alleged limitations warrants reversal.   (Mot. 12.)

17          Defendant counters that the ALJ did summarize Ms. Juarez's testimony that Plaintiff

18   required a conservatorship, could easily be taken advantage of by others, and needed reminders to

19   complete tasks due to his borderline intellectual functioning.   (Opp. 10.)   Plaintiff contends that

20   the clear consideration of her testimony satisfied the ALJ's burden under Lambert.   (Opp. 10.)

21          Further, Defendant argues that the ALJ reasonably found the subjective complaints to be

22   inconsistent with his daily activities.   (Opp. 10.)   Defendant asserts that the ALJ considered the

23   evidence of his activities and achievements which were inconsistent with the allegation of total

24   disability.   (Opp. 10.)   Further, Defendant contends that the ALJ relied on the functional

25   assessments of the medical sources more than Plaintiff's statements.   (Opp. 10.)   Defendant also

26   argues that Plaintiff has not challenged the ALJ's finding that Dr. Swanson's opinions were

27   generally persuasive and has thus waived the issue.   (Opp. 10-11.)   Defendant asserts that Plaintiff

28   is seeking for the Court to emphasize an alternate set of facts, but the ALJ's reasoning was

1  rational and should be affirmed.  (Opp. 11.)

2      1.      Legal Standards

3      **a.      Claimant testimony**

4      A claimant's statements of pain or other symptoms are not conclusive evidence of a

5  physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn,

6  495 F.3d at 635 ("An ALJ is not required to believe every allegation of disabling pain or other

7  non-exertional impairment.").    Rather, an ALJ performs a two-step analysis to determine

8  whether a claimant's testimony regarding subjective pain or symptoms is credible.  See Garrison

9  v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First,

10  the claimant must produce objective medical evidence of an impairment that could reasonably be

11  expected to produce some degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014;

12  Smolen, 80 F.3d at 1281–82.  If the claimant satisfies the first step and there is no evidence of

13  malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms

14  only by providing specific, clear, and convincing reasons for doing so."  Lambert v. Saul, 980

15  F.3d 1266, 1277 (9th Cir. 2020) (citations omitted).

16      If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other

17  limitations is unreliable, the ALJ must make a credibility determination citing the reasons why

18  the testimony is unpersuasive.  The ALJ must specifically identify what testimony is credible and

19  what testimony undermines the claimant's complaints.  In this regard, questions of credibility

20  and resolutions of conflicts in the testimony are functions solely of the Secretary.  Valentine v.

21  Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980 F.3d at

22  1277.

23      In addition to the medical evidence, factors an ALJ may consider include the location,

24  duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms;

25  the type, dosage, effectiveness or side effects of any medication; other measures or treatment

26  used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as

27  daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as

28  ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal

1  contradictions in the claimant's statements and testimony, and other testimony by the claimant

2  that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014);

3  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d

4  1028, 1040 (9th 2007); Smolen, 80 F.3d at 1284.  Thus, the ALJ must examine the record as a

5  whole, including objective medical evidence; the claimant's representations of the intensity,

6  persistence and limiting effects of his symptoms; statements and other information from medical

7  providers and other third parties; and any other relevant evidence included in the individual's

8  administrative record.  SSR 16-3p, at *5.

9     **b.     Witness testimony**

10     The Ninth Circuit has held that "[l]ay testimony as to a claimant's symptoms is

11  competent evidence that an ALJ must take into account, unless he or she expressly determines to

12  disregard such testimony and gives reasons germane to each witness for doing so."  Tobeler v.

13  Colvin, 749 F.3d 830, 832 (9th Cir. 2014) (citations omitted); see also Molina v. Astrue, 674

14  F.3d 1104, 1111 (9th Cir. 2012).  In giving "germane reasons" for disregarding a lay witness's

15  testimony, the ALJ "should explain the weight given to opinions from these sources or otherwise

16  ensure that the discussion of the evidence in the determination or decision allows a claimant or

17  subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an

18  effect on the outcome of the case."  Wilson v. Berryhill, No. 17-cv-05385-PJH, 2018 WL

19  6421874, at *12 (N.D. Cal. Dec. 6, 2018).  Germane reasons must also be specific.  Bruce v.

20  Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009).

21     2.     Discussion

22     **a.     The ALJ did not err in considering third party witness testimony**

23     The ALJ did consider the testimony of Plaintiff's mother.  At the hearing, his mother

24  testified that she has a conservatorship over him because he is unable to make appointments with

25  his doctors on his own.  (AR 33, 45.)  On December 13, 2017, Mr. and Mr. DeJuarez were

26  appointed as conservators having exclusive authority to give consent for and to require the

27  conservatee to receive medical treatment.  (AR 187.)

28     In addressing the severity of Plaintiff's mental impairments, the ALJ found that he had

1   marked limitations in understanding, remembering, or applying information.  (AR 30.)   In
2   making this finding, he considered that Plaintiff's mother alleged that he had difficulty
3   remembering generally, following instructions, and completing tasks.  (AR 30.)  Specifically, at
4   the hearing, his mother testified that she had to remind him every five or ten minutes to do some
5   things, like brushing his teeth, take out the trash, or clean his room.  (AR 45.)  He does not need
6   reminders to go to the bathroom, get dressed or eat.  (AR 46.)

7   However, the ALJ considered that his mother also stated that he could shop and play
8   games.  (AR 30.)  If she took him to the store, he could correctly buy items off a list up to $20.
9   (AR 46.)  If she just told him the items to buy, he would only remember three to five items.  (AR
10  47.)  On a typical day, when he is home alone, he will use his tablet and play his games.  (AR
11  48.)  She does not know what types of games he plays, just that he is on the tablet and television.
12  (AR 48.)   When his mother is home, she can have him throw out the trash, pick up the
13  containers, water the plants and other things.  (AR 48.)  The ALJ also found no indication in the
14  record of any issues with Plaintiff's short- or long-term memory.  (AR 30.)

15  In addressing Plaintiff's ability to concentrate, persist, or maintain pace, the ALJ
16  considered that his mother alleged he has limitations in concentrating generally, focusing
17  generally, following instructions, and completing tasks.  (AR 30.)  On the other hand, the ALJ
18  considered that Plaintiff's mother also testified that he was able to watch television, play games,
19  and manage funds.  (AR 30, 45, 46, 48.)  The ALJ also noted that the record did not establish any
20  significant distractibility, even in testing contexts.  (AR 30.)

21  The ALJ considered that Plaintiff has borderline intellectual functioning, but also
22  considered according to his mother, Plaintiff is not entirely dependent.  (AR 33.)  Plaintiff is able
23  to use the bathroom, change clothes, and eat without reminders.  (AR 33, 46.)  Plaintiff was able
24  to complete high school, albeit in special education; and his education records indicate that he is
25  currently enrolled in adult classes with a goal of entering the workforce.  (AR 33.)   At the
26  hearing, his mother testified that Plaintiff graduated with a diploma and did not need assistance
27  or reminders at school.  (AR 46.)

28  The ALJ considered Ms. Juarez's testimony and to the extent that she testified that the

1  severity of Plaintiff's symptoms precluded him from working, the reasons provided to reject that

2  testimony were germane to the witness.  The ALJ did not err in considering the testimony of

3  Plaintiff's mother.

4          **b.**     **The ALJ did not err in considering Plaintiff's testimony**

5         On November 19, 2020, Plaintiff completed an adult function report.  (AR 257-64.)  He

6  reported that he did not need reminders to take care of personal needs and grooming or to take

7  his medication.  (AR 259.)  He prepares his meals consisting of sandwiches and burritos.  (AR

8  259.)  His chores include cleaning and laundry.  (AR 259.)  He does not need encouragement to

9  do those things.  (AR 259.)  When he goes out, he walks, and he is able to go out alone.  (AR

10 260.)  He does not drive.  (AR 260.)  He shops in stores but is not able to pay bills.  (AR 260.)

11 His hobby is sports.  (AR 261.)  He talks with other people on the phone and regularly attends

12 sporting events.  (AR 261.)  He does not need to be reminded to go places and does not need

13 someone to accompany him.  (AR 261.)  He has no problems getting along with family, friends,

14 neighbors, or others.  (AR 262.)  His conditions affect his hearing, and he has loss of hearing in

15 his left ear.  (AR 262.)  He does not finish what he starts.  (AR 262.)

16        On March 26, 2020, Plaintiff's sister completed an adult function report for Plaintiff.

17 (AR 237-44.)  Plaintiff lives in a house with his family.  (AR 237.)  When he gets up in the

18 morning, he watches television or plays games.  (AR 238.)  He waits until his mom tells him to

19 brush his teeth and go eat breakfast and then he will go back to his room to watch television or

20 play.  (AR 238.)  Sometimes he does chores if his mom tells him to, such as taking out the trash

21 or watering the plants.  (AR 238.)  Plaintiff takes care of his own personal care but is still

22 learning how to shave by himself.  (AR 238.)  He needs reminders to brush his teeth, get a

23 haircut and shave, as well as when to take his medications.  (AR 239.)  He does not cook because

24 he is afraid of the stove and his coordination is not good so he will drop and break things.  (AR

25 239.)  Plaintiff takes out the trash, does his own laundry, waters the plants, and makes his bed

26 when he is told to do so.  (AR 239.)  Plaintiff goes outside daily but does not drive because he is

27 nervous and afraid.  (AR 240.)  Plaintiff shops in stores and can count change.  (AR 240.)  He

28 does not know how to pay bills, use a check book, or handle a savings account.  (AR 240.)

1   Plaintiff's hobbies are watching television, playing video games, and watching school sports.

2   (AR 241.)  He is very good at playing video games and plays daily.  (AR 241.)  Plaintiff hangs

3   out with his friends at school.  (AR 241.)  He does not need reminders to go places, nor does he

4   need to be accompanied.  (AR 241.)  He has a temper and gets mad very easily.  (AR 242.)  His

5   conditions affect his ability to talk, hear, complete tasks, concentrate, understand, and follow

6   instructions.  (AR 242.)  He is unable to pronounce certain words and his speech is limited.  (AR

7   242.)  He uses a hearing aid because he cannot hear well.  (AR 242.)  He gets distracted very

8   easily and does not understand complex instructions.  (AR 242.)  He can pay attention for 10 to

9   15 minutes.  (AR 242.)  Plaintiff cannot follow written instructions but can follow spoken

10  instructions if they are simple and short.  (AR 242.)  He gets along very well with authority

11  figures.  (AR 243.)  He needs to use a hearing aid all day every day.  (AR 243.)

12      In considering his ability to adapt or manage himself, the ALJ considered Plaintiff's

13  testimony that he had difficulty handling change and managing his mood.  (AR 30.)  However,

14  Plaintiff also said that he is able to handle self-care and personal hygiene although needing some

15  reminders.  (AR 30, 238, 239.)  The ALJ also noted that the objective evidence in the record

16  showed Plaintiff to have appropriate hygiene and grooming during treatment visits.  (AR 30-31.)

17      Plaintiff alleges that the ALJ failed to credit the severity of his testimony regarding his

18  symptoms because he did not acknowledge the manner in which Plaintiff was able to accomplish

19  the tasks noted.  (Mot. 11.)  Plaintiff cites an office visit with Dr. Javali on November 30, 2020,

20  in which it is noted that Plaintiff was still in his last year of high school.  (AR 503.)  However, as

21  the ALJ noted, Plaintiff entered the adult transition program in the 2018/2019 school year,

22  attending four classes per day, and in 2020 he was training on work skills.  (AR 33, 560, 561,

23  603-04.)  An assessment on October 14, 2020, notes:

> [He has] academic weaknesses in the areas of math, reading, and writing.  In each
> area of academic assessment, he earned scores in the Low to Very Low range of
> functioning. His previous and current grades reflect the ability to meet academic
> goal requirements in the Adult Transition Program.  His teacher from the
> 2019/2020 school year reported that he displayed appropriate social skills when
> engaging with peers.  He was noted to be a responsible student that completed
> work independently.

28  (AR 630.)

1    Plaintiff also points to the assessment for this visit, which states he has mild mental

2    retardation with limited understanding, probably at elementary to middle school level.  (AR 505.)

3    The suggestion that Plaintiff was probably at elementary to middle school level is insufficient to

4    rise to the level of a medical finding that would require this action to be remanded.  Additionally,

5    the ALJ found the opinion of Dr. Swanson, a consultative examiner persuasive as it was generally

6    consistent with the record evidence and testimony.  (AR 34.)   Dr. Swanson conducted a

7    consultative examination on September 18, 2020.  (AR 482-86.)   He opined that Plaintiff was

8    able to maintain concentration and relate appropriately to others in a job setting; would be able to

9    handle funds in his own best interests; can understand, carry out, and remember simple

10   instructions; is able to respond appropriately to usual work situations, such as attendance, safety,

11   and the like; and changes in routine would not be excessively problematic for him. (AR 485.)  Dr.

12   Swanson also found there did not appear to be substantial restrictions in daily functioning, nor

13   were difficulties in maintaining social relationships present. (AR 485.)

14   The determination that a claimant's complaints are inconsistent with clinical evaluations

15   can satisfy the requirement of stating a clear and convincing reason for discrediting the

16   claimant's testimony.  Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1297

17   9th Cir. 1999).  The ALJ properly considered this evidence in weighing Plaintiff's credibility.

18   "While subjective pain testimony cannot be rejected on the sole ground that it is not fully

19   corroborated by objective medical evidence, the medical evidence is still a relevant factor in

20   determining the severity of the claimant's pain and its disabling effects."  Rollins v. Massanari,

21   261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

22   The ALJ also considered Plaintiff's mother's allegations of the need for reminders at

23   home to attend to chores and personal hygiene and his symptom testimony regarding his

24   distractibility.  (AR 30.)  But the ALJ also noted that Plaintiff was able to watch television, play

25   video games and manage funds.  (AR 30.)  "Inconsistencies between a claimant's testimony and

26   the claimant's reported activities provide a valid reason for an adverse credibility determination."

27   Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014).

28   The Court finds that the ALJ properly considered and incorporated Plaintiff's

1  developmental limitations in the RFC and did not err by misrepresenting the severity of Plaintiff's

2  disability.  Plaintiff's motion for summary judgment on this ground shall be denied.

3       **B.     Whether the ALJ Erred by Not Explaining a Discrepancy in the Opinion
             Evidence and the RFC**

4

5       Plaintiff also argues that the ALJ erred because he failed to explain a discrepancy

6  between the RFC and the audiologist opining that Plaintiff would have difficulty understanding

7  conversational speech in noise, when the speaker was at a distance, and when he is unable to see

8  the speakers face.  (Mot. 6-7.)  Plaintiff contends that the ALJ found the opinion persuasive but

9  vague and did not explain why he did not include a limitation in how Plaintiff was able to receive

10 instructions.  (Mot. 7.)  Plaintiff argues that the failure to include additional limitations of written

11 instructions or instructions in a quiet environment was error.  (Mot. 8.)  Plaintiff contends that

12 the failure to explain why this limitation was not included was erroneous and harmful as the VE

13 was not provided with the limitation in the hypothetical.  (Mot. 7-8.)

14      Defendant counters that the ALJ exercised his role to interpret the vocational significance

15 of the opinion and accommodated the opinion by limiting Plaintiff to simple, routine work with

16 no more than moderate noise.  (Def. Opp. To Pl.'s Opening Brief ("Opp.") 8, ECF No. 18.)

17 Defendant argues that an opinion that verbal instructions must be face to face is specious because

18 any common sense understanding of the workplace leads to the conclusion that verbal

19 instructions are generally given face to face and not at a great distance.  (Opp. 8.)  Additionally,

20 Defendant asserts that any error would be harmless as the occupations identified by the ALJ did

21 not require significant interaction with people.  (Opp. 8.)

22      1.     Weighing Medical Opinions and Prior Administrative Medical Findings

23      Where, as here, a claim is filed after March 27, 2017, the revised Social Security

24 Administration regulations apply to the ALJ's consideration of the medical evidence.  See

25 Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions), 82 Fed. Reg.

26 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.  Under the updated

27 regulations, the agency "will not defer or give any specific evidentiary weight, including

28 controlling weight, to any medical opinion(s) or prior administrative medical finding(s),

including those from [the claimant's own] medical sources."   20 C.F.R. §§ 404.1520c(a); 416.920c(a).  Thus, the new regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions, and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources.  See 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017).  As recently acknowledged by the Ninth Circuit, this means the 2017 revised Social Security regulations abrogate prior precedents requiring an ALJ to provide "clear and convincing reasons" to reject the opinion of a treating physician where uncontradicted by other evidence, or otherwise to provide "specific and legitimate reasons supported by substantial evidence in the record," where contradictory evidence is present.  Woods v. Kijakazi, 32 F.4th 785, 788–92 (9th Cir. 2022).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; [and] (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  20 C.F.R. §§ 404.1520c(a), (c)(1)–(5).  The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency.  Woods, 32 F.4th at 791 (citing 20 C.F.R. §§ 404.1520c(a), (b)(2)).  Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions … will be."  20 C.F.R. § 404.1520c(c)(1).  Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) … will be."  20 C.F.R. § 404.1520c(c)(2).

Accordingly, the ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors.  20 C.F.R. §

404.1520c(b)(2).   The ALJ "may, but [is] not required to, explain how [she] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue.  20 C.F.R. §§ 404.1520c(b)(2)–(3).  Further, the ALJ is "not required to articulate how he considered evidence from nonmedical sources."  20 C.F.R. § 404.1520c(d).  Nonetheless, even under the new regulatory framework, the Court still must determine whether the ALJ adequately explained how he considered the supportability and consistency factors relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence.  See Martinez V. v. Saul, No. CV 20-5675-KS, 2021 WL 1947238, at *3 (C.D. Cal. May 14, 2021).

        2.   Discussion

        In addressing Plaintiff's hearing loss, the ALJ considered the opinions of the state agency consultants who found that Plaintiff should avoid concentrated exposure to noise and hazards.  (AR 34, 62, 79.)  The ALJ found the opinions persuasive because they were generally consistent with the medical record which notes ongoing reduced hearing function despite prescribed hearing aids.  (AR 34, 367, 368, 375, 380-81, 437, 446-55, 470-71, 473-74, 599-600, 660.)  The ALJ also considered the records of Plaintiff's treating providers.

> The undersigned also notes the treatment provider statements with regard to the claimant's hearing ability (See, e.g., Exh. 2F/10 (the claimant "would experience difficulty understanding conversational speech in noise, when a speaker is at a distance, and when he is unable to see a speaker's face for visual cues"): the undersigned finds these opinions generally persuasive, as they are based on in-person assessment and testing of the claimant, and generally consistent with those findings, but are somewhat vague with respect to the claimant's hearing in a work context.

(AR 35.)

        "A finding that a physician's opinion is too vague to be useful in making a disability determination can serve as a specific and legitimate reason for discounting that opinion."  Dena P. v. Comm'r of Soc. Sec., No. 3:19-CV-5929-DWC, 2020 WL 1934129, at *2 (W.D. Wash. Apr. 22, 2020) (citing 20 C.F.R. § 404.1527(c)(3)) (The better an explanation a source provides for a medical opinion, the more weight the Social Security Administration will give that medical opinion.) and Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (holding that statement that

1    the plaintiff would have "decreased concentration skills" was too vague to be useful in the

2    disability determination)); see also Judy C. v. Kijazaki, No. 5:23-CV-00382-MAA, 2023 WL

3    8809873, at *5 (C.D. Cal. Dec. 15, 2023) (physician opinion that uses vague terms that are not

4    vocationally relevant may be discounted).

5         Here, the ALJ erred by finding that the opinion that Plaintiff would experience difficulty

6    in understanding conversational speech in noise, when a speaker is at a distance, and he is unable

7    to see the speaker's face was vague in a work context.  While "at a distance" is vague, the

8    opinion clearly addresses the limitations due to Plaintiff's hearing loss and that he needs to see

9    the speaker's face to receive visual clues to aid in understanding.  The addition of a limitation

10   addressing Plaintiff's ability to understand speech in noise would be vocationally relevant.

11        The party seeking to have a judgment set aside due to error has the burden of showing

12   the error was harmful.  Howland v. Saul, 804 F. App'x 467, 469 (9th Cir. 2020) (citing Molina,

13   674 F.3d at 1111); Shinseki, 556 U.S. at 409.  Here, Plaintiff argues that the ALJ's error was

14   harmful because it did not include the additional limitation of written instructions or instructions

15   provided in a quiet environment.  (Mot. 8.)  However, the opinion of Plaintiff's audiologist did

16   not state that written instructions were necessary, and as the record demonstrates, Plaintiff asserts

17   that he is unable to follow written instructions and the ALJ limited him to simple instructions,

18   such as a grocery list.  (AR 32, 242.)  His school records show that written expression and

19   reading comprehension are areas of weakness for him.  (AR 550.)  Further, there is no opinion in

20   the record that suggests that Plaintiff requires written instructions as a work limitation.

21        Additionally, Plaintiff argues that the error is harmful because the RFC should include a

22   limitation that instructions be provided in a quiet environment.  (Mot. 8.)  However, there is no

23   opinion evidence, including the audiologist note at issue, which recommends such a limitation.

24   The ALJ found the opinions of Dr. Arnold and Dr. Vu persuasive.  (AR 34.)  Specifically, the

25   note indicates that he can understand in noise but may need additional support.  Both the agency

26   consultants found that Plaintiff should avoid concentrated exposure to noise due to hearing loss

27   precautions.  (AR 34, 62, 79.)  The ALJ accommodated Plaintiff's hearing loss by incorporating

28   the hearing precautions in the RFC since Plaintiff can never be exposed to high exposed places,

or to moving mechanical parts, and can be exposed to no more than a moderate noise level as that term is defined in the Selected Characteristics of Occupations ("SCO") within the Dictionary of Occupational Titles ("DOT").[5]   (AR 32.)  Plaintiff has failed to meet his burden to show that the error in finding the limitations opined by his audiologist vague was harmful.  The motion for summary judgment is denied on this ground.

### C.  Whether the ALJ Erred by Including Jobs that Conflict with the Limitations in the RFC

Finally, Plaintiff contends that the ALJ erred because the jobs identified at step five conflict with the limitations in the RFC and the ALJ was not questioned about the inconsistency.  (Mot. 8.)  Plaintiff argues that job of laundry laborer is identified as reasoning level 2 which is defined as applying "commonsense understanding to carry out *detailed* but uninvolved written or oral instructions."  (Mot. 9 (emphasis in original).)  Further, Plaintiff contends this job includes duties such as "lubricates machines, using grease gun and oil can" which conflict with the RFC.  (Mot. 9.)  Plaintiff also asserts that the position of sorter is identified as reasoning level 2 which conflicts with the limitation to simple instructions and the job duties describe placing sorted articles onto a conveyor belt which would constitute a moving mechanical part.  (Mot. 9.)  Plaintiff contends that the position of final assembler is only identified as having 13,000 jobs in the national economy and as such cannot qualify as existing in significant numbers.  (Mot. 9.)  Plaintiff argues that the failure to clarify the inconsistencies between the jobs identified and his RFC are harmful error as the only job remaining does not exist in significant numbers in the national economy.  (Mot. 9-10.)

Defendant counters that there is no apparent conflict between level 2 reasoning and the ability to perform simple work.  (Opp. 14.)  Defendant points to Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015), in which the Count found an apparent conflict between level 3 reasoning and the limitation to simple tasks.  (Opp. 14.)  Defendant also notes Rounds v. Comm'r, 807 F.3d 996, 1003 (9th Cir. 2015), which found that the limitation to simple one to two step tasks was more restrictive than a

---

[5] Additionally, the Court does find merit in Defendant's argument that it is common sense that in the work environment instructions are generally given face to face.  Even in the context of a group instruction, it would be normal for the individual to ensure that everyone was paying attention prior to providing instructions.  As such, the failure to include a limitation that Plaintiff be able to see an individual's face when receiving instructions would be harmless error.

limitation to simple, routine or repetitive tasks.  (Opp. 14.)  Defendant asserts that neither <u>Zavalin</u> or <u>Rounds</u> apply to this matter and since Plaintiff was not limited to one to two step tasks and the jobs identified do not require Level 3 reasoning, no conflict exists.  (Opp. 14.)

Defendant concedes that there is an apparent conflict between the occupation of sorter and the preclusion from working on an assembly line or conveyor belt.  (Opp. 14.)  Defendant does argue that there is no apparent conflict between a preclusion on moving mechanical parts and the laundry worker occupation.  (Opp. 14.)  Defendant asserts that the DOT directly contradicts Plaintiff's argument because it states that the job does not have any exposure to moving mechanical parts.  (Opp. 15.)  Defendant also asserts that hazards only encompass unusually dangerous environmental conditions.  (Opp. 15.)  Further, Defendant argues that case law forecloses the argument because the Ninth Circuit has affirmed "that there was no obvious or apparent conflict between the VE's testimony and the DOT" description of the laundry worker job versus a preclusion against exposure to "hazards, such as unprotected heights or moving machinery."  (Opp. 15 (quoting <u>Maxwell v. Saul</u>, 840 Fed. Appx. 896, 898 (9th Cir. 2020).)  Defendant also asserts that it is clear that moving mechanical parts are not an essential, integral or expected part of the laundry worker occupation.  (Opp. 16.)  Defendant states that court should reject Plaintiff's argument that radically departs from common sense understanding, the authority cited, and the VE's testimony.  (Opp. 15.)

Finally, Defendant argues that although Plaintiff is correct that the ALJ cannot rely on the sorter occupation, the error is harmless because there remain 24,000 jobs in the other two occupations.  (Opp. 16.)  Defendant cites authority finding 24,000 jobs in the national economy to be significant.  (Opp. 17.)

1.   <u>Legal Standard</u>

As previously noted, at step five, the Commissioner must "identify specific jobs existing in substantial numbers in the national economy that [a] claimant can perform despite [his] identified limitations."  <u>Zavalin</u>, 778 F.3d at 845 (citation and internal quotations omitted).  That is, the ALJ must consider potential occupations the claimant may be able to perform, based on the claimant's RFC, age, education and work experience, and the information provided by the DOT and the VE.  <u>See id.</u> at 846; <u>Valentine</u>, 574 F.3d at 689; 20 C.F.R. § 416.920(g).

"The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings."  SSR 00-4p, available at 2000 WL 1898704 (Dec. 4, 2000).  "The term 'occupation,' as used in the DOT, refers to the collective description of those jobs.  Each occupation represents numerous jobs." Id.; see also Johnson v. Shalala, 60 F.3d 1428, 1435 (9th 1995) (noting the DOT is not comprehensive, that "[i]ntroduction of evidence of the characteristics of specific jobs available in the local area through the testimony of a vocational expert is appropriate, even though the job traits may vary from the way the job title is classified in the DOT," and holding "[T]he ALJ was within his rights to rely solely on the vocational expert's testimony.") (citations omitted). Information about a particular job's requirements may be available from a VE's experience in job placement or career counseling.  SSR 00-4p.  Thus, a VE may be able to provide more specific information about jobs or occupations than the DOT.  Id.; see also Lounsburry, 468 F.3d at 1114.  Accordingly, the ALJ may rely on VE testimony regarding "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy."  Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999); Lockwood v. Comm'r of Soc. Sec., 616 F.3d 1068, 1071 (9th Cir. 2010) (the ALJ can meet the agency's burden of proving that other work exists in significant numbers by the testimony of a VE).

Nonetheless, hypothetical questions posed to the VE must set out all the limitations and restrictions of the particular claimant, as supported by the medical record.  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Where the testimony of a VE is used, the VE must identify a specific job or jobs in the national economy having requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy.  20 C.F.R. § 404.1566(b); see Burkhart v. Bowen, 856 F.2d 1335, 1340 n. 3 (9th Cir. 1988).

SSR 00-4p provides that where there is an apparent unresolved conflict between VE evidence and the DOT, the ALJ is required to reconcile the inconsistency; that is, the ALJ must elicit a reasonable explanation for the conflict before relying on the VE to support a determination or decision about whether the claimant is disabled.  SSR 00-4p, at *2; see also Johnson, 60 F.3d at 1435 (holding that, if the ALJ relies on a VE's testimony that contradicts the

1    DOT, the record must contain "persuasive evidence to support the deviation."). "An example of

2    a conflict between the DOT and a VE's testimony is when the DOT's description of a job

3    includes activities a claimant is precluded from doing, and the VE nonetheless testifies that the

4    claimant would be able to perform that job." Martinez v. Colvin, No. 1:14-cv-1070-SMS, 2015

5    WL 5231973, at *4 (E.D. Cal. Sept. 8, 2015) (citations omitted); see also Zavalin, 778 F.3d at

6    846 (providing example of apparent conflict as "expert testimony that a claimant can perform an

7    occupation involving DOT requirements that appear more than the claimant can handle"). The

8    ALJ must inquire, on the record at the disability hearing, as to whether or not there is such

9    consistency. SSR 00-4p, at *2; Massachi v. Astrue, 486 F.3d 1149, 1153–54 (9th Cir. 2007).

10   Further, the Social Security Administration ("SSA") notes neither the DOT nor the VE's

11   evidence "automatically 'trumps' when there is a conflict"; rather, the ALJ must resolve the

12   conflict by determining if the explanation given by the VE is reasonable and provides a basis for

13   relying on the VE's testimony rather than the DOT information. SSR 00-4p, at *2.

14        Where the ALJ fails to resolve an apparent inconsistency, the court is left with "a gap in

15   the record that precludes [it] from determining whether the ALJ's decision is supported by

16   substantial evidence." Zavalin, 778 F.3d at 846; Massachi, 486 F.3d at 1154 ("we cannot

17   determine whether the ALJ properly relied on [the VE's] testimony" due to unresolved

18   occupational evidence). Nevertheless, a failure to ask the VE whether his testimony conflicts

19   with the DOT may amount to harmless error if there is no conflict, or if the VE provides

20   "sufficient support for [his] conclusion so as to justify any potential conflicts." Massachi, 486

21   F.3d at 1154, n.19; see also Hann v. Colvin, No. 12-cv-06234, 2014 WL 1382063, at *15 (N.D.

22   Cal. Mar. 28, 2014).

23        2.    Discussion

24        The Ninth Circuit has advised that, "it's important to keep in mind that the [DOT] refers

25   to 'occupations,' not to specific jobs. 'Occupation' is a broad term that includes 'the collective

26   description' of 'numerous jobs' and lists 'maximum requirements' of the jobs as 'generally

27   performed.' " Gutierrez v. Colvin, 844 F.3d 804, 807 (9th Cir. 2016) (quoting SSR 00-4P, 2000

28   WL 1898704, at *2–3.) "Because of this definitional overlap, not all potential conflicts between

an expert's job suitability recommendation and the [DOT's] listing of "maximum requirements" for an occupation will be apparent or obvious." <u>Gutierrez</u>, 844 F.3d at 807-08.)  The ALJ is only required to follow up on those conflicts that are apparent or obvious.  <u>Id.</u> at 808.  Tasks that are essential, integral, or expected parts of a job are the most likely to qualify as apparent conflicts and where the job itself is a familiar one less scrutiny by the ALJ is required.  <u>Id.</u>

At the hearing, the VE was presented with a hypothetical of an individual with the same age and education as Plaintiff and having the same limitations as described above.  (AR 49.)  The VE opined that this individual could work as a Laundry Laborer (DOT 361.685-018) – medium exertion, 11,000; Sorter (DOT 361.687-014) – light exertion, 23,000; and Final Assembler (DOT 713.687-018) – sedentary exertion, 13,000.  (AR 50.)  Relying on this testimony, the ALJ found that there are jobs that exist in the national economy in significant numbers that Plaintiff can perform.  (AR 35-36.)

Defendant concedes that Plaintiff is unable to perform the position of sorter.  (Opp. 16.) Plaintiff does not challenge the finding that he can perform the job of final assembler but argues that the job of laundry laborer conflicts with the limitations in his RFC and therefore only 13,000 jobs remain which is not a significant number of jobs in the national economy.   Defendant counters that there is no conflict with the job of laundry sorter, leaving 24,000 jobs available which has been found to be a significant number of jobs in the national economy by other courts.

a.      **No apparent conflict exists between the RFC and the job of laundry laborer**

Plaintiff contends the job of laundry laborer conflicts with his RFC because it requires Level 2 reasoning which is contrary to his limitation to simple work, and it includes job duties such as lubricating machines and using a grease gun and oil can which conflict with his preclusion from moving mechanical parts.  (Mot. 9.)  Defendant counters there is no apparent conflict between level 2 reasoning and the ability to perform simple work.  (Opp. 14.)  Further, defendant argues the DOT directly contradicts Plaintiff's argument as it states that the job does not have any exposure to moving parts.  (Opp. 15.)  Additionally, Defendant points out that the Ninth Circuit has found there to be no obvious conflict between the VE's testimony and the DOT description of launder worker versus a job preclusion such as exposure to hazards.  (Opp. 15.)

The DOT description for Laundry worker II states:

> Tends laundering machines to clean articles, such as rags, wiping cloths, filter cloths, bags, sacks, and work clothes: Loads articles into washer and adds specified amount of detergent, soap, or other cleaning agent. Turns valve to fill washer with water. Starts machine that automatically washes and rinses articles. Lifts clean, wet articles from washer and places them successively into wringers and driers for measured time cycles. Sorts dried articles according to identification numbers or type. Folds and places item in appropriate storage bin. Lubricates machines, using grease gun and oil can. May dissolve soap granules in hot water and steam to make liquid soap. May mend torn articles, using needle and thread. May sort and count articles to verify quantities on laundry lists. May soak contaminated articles in neutralizer solution in vat to precondition articles for washing. May mix dyes and bleaches according to formula, and dye and bleach specified articles. May be designated according to article cleaned as Bag Washer (any industry); Cloth Washer (any industry); Color-Straining-Bag Washer (textile); Oil-Rag Washer (any industry); Wiping-Rag Washer (tex. prod., nec).

DOT 361.685-018, Laundry Worker II, available at 1991 WL 672987.  As relevant here, the DOT further notes that the job requires:

> Reasoning: Level 2 - Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.
>
> …
>
> Moving Mech. Parts: Not Present - Activity or condition does not exist

Id.

    i.    There is no conflict with Level 2 reasoning

First, the Court considers Plaintiff's argument that there is a conflict between the requirement of Level 2 reasoning and the RFC finding that Plaintiff can understand, remember and carry out simple instructions and make simple work-related decisions.   The reasoning levels in the DOT range from Level 1(low) to Level 6 (high).  Levels 1 and 2 are defined as follows:

> LEVEL 1
> Apply commonsense understanding to carry out simple one- or two-step instructions.  Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.
>
> LEVEL 2
> Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions.  Deal with problems involving a few concrete variables in or from standardized situations.

DOT. App. C, Reasoning Development, available at 1991 WL 688702 (Jan. 1, 2016).

Here, Plaintiff has been limited to carrying out simple instructions and making simple

work-related decisions.  (AR 32.)  Courts in this circuit have consistently found that Level 2 reasoning jobs do not conflict with a restriction to simple work.  <u>See</u> <u>Lara v. Astrue</u>, 305 F. App'x 324, 326 (9th Cir. 2008) ("Reasoning Level 1 jobs are elementary, exemplified by such tasks as counting cows coming off a truck, and someone able to perform simple, repetitive tasks is capable of doing work requiring more rigor and sophistication—in other words, Reasoning Level 2 jobs."); <u>Grigsby v. Astrue</u>, No. EDCV 08-1413 AJW, 2010 WL 309013, at *2 (C.D. Cal. Jan. 22, 2010) (The restriction to jobs involving no more than 2 steps is what distinguishes Level 1 reasoning from Level 2 reasoning.);  <u>Abrew v. Astrue</u>, 303 F. App'x 567, 569 (9th Cir. 2008) (finding no conflict between a limitation to only simple tasks and the VE testimony that claimant could perform jobs that require Level 2 reasoning.); <u>Coleman v. Astrue</u>, No. CV 10-5641 JC, 2011 WL 781930, at *5 (C.D. Cal. Feb. 28, 2011) ("the weight of prevailing authority precludes a finding of any inconsistency between a reasoning level of two and a mere limitation to simple, repetitive tasks or unskilled work"); <u>Xiong v. Comm'r of Soc. Sec.</u>, No. 1:09-CV-00398-SMS, 2010 WL 2902508, at *6 (E.D. Cal. July 22, 2010) ("Courts within the Ninth Circuit have consistently held that a limitation requiring simple or routine instructions encompasses the reasoning levels of one and two."); <u>see</u> <u>also</u> <u>Rounds</u>, 807 F.3d at 1004 (Level 2 reasoning requires "detailed" instructions which are tasks with more than one or two steps.).

Accordingly, the Court finds no apparent conflict between Plaintiff's ability to understand, remember and carry out simple instructions and make simple work-related decisions as found in his RFC and jobs requiring Level 2 reasoning.

ii.   <u>There is no conflict with the restriction from moving mechanical parts</u>

Although Plaintiff contends that having to lubricate machines and the use of an oil can and grease gun conflict with the restriction from moving mechanical parts, the job description itself states that exposure to moving mechanical parts does not exist.  DOT 361.685-018, Laundry Worker II, <u>available</u> <u>at</u> 1991 WL 672987.  Here, the ALJ included in the RFC that Plaintiff may never be exposed to moving mechanical parts. (AR 32.)  As the DOT specifies that there is no exposure to moving mechanical parts, there is no apparent conflict.  Accordingly, the Court finds no apparent conflict between the RFC and the DOT.  The ALJ was entitled to rely on the VE's

1   "experience in job placement" to account for "a particular job's requirements," and correctly did

2   so here.  Gutierrez, 844 F.3d at 809 (quoting SSR 00-4P, 2000 WL 1898704, at *2).

3   **b.  Jobs that exist in significant numbers which Plaintiff can perform**

4   Finally, the Court considers Plaintiff argument that without the job of sorter there are not

5   significant jobs that exist in the national economy that he can perform.

6   As stated above, at step five, the burden shifts to the Commissioner, who must show that

7   there are a significant number of jobs in the national economy that the claimant can perform

8   given his RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry, 468

9   F.3d at 1114.  In Gutierrez v. Commr of Soc. Sec., 740 F.3d 519 (9th Cir. 2014), the Ninth

10  Circuit considered what constitutes a region for the purposes of the regulations.  After finding

11  that the region could include the entire state, court noted that they have never set a bright-line

12  rule for what constitutes a "significant number" of jobs.  Gutierrez, 740 F.3d at 528.  They then

13  considered whether 25,000 jobs in several regions of the country are significant.  Id. at 528-29.

14  The court determined that 25,000 nationally was a close call but affirmed the ALJ's decision

15  holding that 25,000 jobs nationally is a significant number of jobs.  Id. at 529.

16  At the hearing, the VE testified that there are approximately 11,000 laundry sorter jobs

17  and 13,000 jobs for the final assembler nationally.  (AR 50.)  This would be a total of 24,000

18  jobs nationally.

19  The Ninth Circuit has declined to adopt a "bright line" rule about the sufficiency of job

20  numbers and has found that a comparison to other cases is instructive.  Beltran v. Astrue, 700

21  F.3d 386, 389 (9th Cir. 2012).   The Circuit's recent unpublished authority has questioned the

22  sufficiency of numbers that are below 12,500 nationally.  Lora M. v. Comm'r of Soc. Sec., No.

23  2:18-CV-00198-MKD, 2019 WL 2130303, at *5 (E.D. Wash. Apr. 5, 2019), report and

24  recommendation adopted sub nom. Lora A. M. v. Comm'r of Soc. Sec., No. 2:18-CV-00198-

25  SMJ, 2019 WL 2127306 (E.D. Wash. May 15, 2019) (collecting cases); Little v. Berryhill, 690

26  F. App'x 915, 917 (9th Cir. 2017) (finding 18,500 jobs not significant).   However, after

27  Gutierrez, some courts have found a number of jobs nationally lower than 25,000 is sufficient.

28  Carlos B. v. Saul, No. 19-CV-06002-KAW, 2021 WL 4440308, at *2 (N.D. Cal. Mar. 18, 2021)

(24,000 jobs nationally); <u>Ronquillo v. Saul</u>, No. 1:19-CV-1665 JLT, 2021 WL 614637, at *8 (E.D. Cal. Feb. 17, 2021) (same); <u>Acuna v. Colvin</u>, No. EDCV 14-2404 AGR, 2015 WL 7566624, at *3 (C.D. Cal. Nov. 24, 2015), judgment entered, No. EDCV 14-2404 AGR, 2015 WL 7566947 (C.D. Cal. Nov. 24, 2015) (same); <u>Nelson v. Colvin</u>, No. C12-5540 RJB, 2014 WL 372496, at *4 (W.D. Wash. Feb. 3, 2014) (22,000 jobs nationally); <u>Anna F. v. Saul</u>, No. ED CV 19-511-SP, 2020 WL 7024924, at *6 (C.D. Cal. Nov. 30, 2020) (21,000 jobs nationally); <u>Connolly v. Colvin</u>, No. 1:15-CV-718-BAM, 2016 WL 8730722, at *6 (E.D. Cal. Sept. 16, 2016) (19,000 jobs nationally); <u>c.f.</u>, <u>Dorado v. Colvin</u>, No. ED CV 15-00952 AFM, 2016 WL 11748617, at *6 (C.D. Cal. Apr. 28, 2016) (finding a combination of 14,500 jobs nationally was not a significant number); <u>Bihil v. Colvin</u>, No. 15-CV-02036-JCS, 2016 WL 4154852, at *9 (N.D. Cal. Aug. 5, 2016) (finding 8,600 jobs in the national economy do not constitute a significant number of jobs); <u>Tammy L. F. v. Berryhill</u>, No. 318CV05090RBLTLF, 2019 WL 286056, at *3 (W.D. Wash. Jan. 3, 2019), report and recommendation adopted sub nom. <u>Foster v. Berryhill</u>, No. 3:18-CV-05090 RBL TLF, 2019 WL 280069 (W.D. Wash. Jan. 22, 2019) (collecting cases finding national numbers less than 14,500 insufficient).

The Court finds that the 24,000 jobs identified by the ALJ are significant as they are close to the 25,000 which the Ninth Circuit found to be a "significant number" of jobs and far more than the 18,500 which the Ninth has found to be insignificant.  Accordingly, any error in finding that Plaintiff can work as a sorter was harmless as a significant number of jobs still exist in the national economy with the deletion of that job from the equation.

# V.

## CONCLUSION AND ORDER

In conclusion, the Court denies Plaintiff's motion for summary judgement and finds no harmful error warranting remand of this action.

Accordingly, IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is DENIED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Rolando Juarez Gill.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **March 15, 2024**

_____
UNITED STATES MAGISTRATE JUDGE